IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERMAINE FORD<br>883 Park Ave.<br>Trenton, NJ 08629<br><br>   Plaintiff,<br><br>v.<br><br>EXCEL MODULAR SCAFFOLD &<br>LEASE CORP., d/b/a EXCEL MODULAR<br>SCAFFOLDING<br>720 Washington St., Unit 5<br>Hanover, MA 02339<br><br>   Defendant. | CIVIL ACTION<br><br>DOCKET NO.:<br><br><br>**JURY DEMAND DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Jermaine Ford (*hereinafter* referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Excel Modular Scaffold & Lease Corp., d/b/a Excel Modular Scaffolding (*hereinafter* referred to as "Defendant") the New Jersey Law Against Discrimination ("NJ LAD")[1] and other applicable state law(s). Defendant unlawfully failed to hire Plaintiff, and he suffered damages more fully described/sought herein.

### JURISDICTION AND VENUE

2. Plaintiff resides in and is a citizen of New Jersey.

---

[1] Plaintiff has filed claims under the Americans with Disabilities Act ("ADA" -42 USC §§ 12101 *et. seq.*) with the EEOC. Plaintiff intends to amend his complaint to include claims under the ADA, once his claims have been administratively exhausted with the EEOC and the EEOC issues a right-to-sue letter. Any claims under the ADA would mirror Plaintiff's NJ LAD claims in the instant Civil Action Complaint.

3. Upon information and belief Defendant Excel Modular Scaffold and Leasing Corp. is incorporated under the laws of Nevada and has a principal place of business in Louisiana, rendering it a citizen of Nevada and Louisiana.

4. This Court, in accordance with 28 U.S.C. 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of New Jersey, Defendant is a citizen of Nevada and Louisiana, and the amount in controversy exceeds $75,000.

5. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

6. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

7. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

8. Plaintiff is an adult who resides at the above-captioned address.

9. Defendant Excel Modular Scaffold & Lease Corp. (hereinafter "Defendant Entity") is a corporation engaged in the business of engineering, planning and environmental consulting and is incorporated in Nevada with a principal place of business in Louisiana.

10. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

12. Plaintiff was employed by Defendant for approximately five (5) months as a carpenter/scaffold builder.

13. During Plaintiff's employment with Defendant, he was placed to work at third-party locations.

14. At all relevant times herein, Plaintiff was placed by Defendant to work at Dupont in Deepwater, New Jersey.

15. While employed with Defendant, Plaintiff was primarily supervised by one Bill Worrilow (Forman) and Dan Tobin (Forman).

16. During his employment with Defendant, Plaintiff was a dedicated and hard-working employee, who performed his job well.

17. In or about April of 2015, Plaintiff began suffering from disabilities related to his ankle and foot.

18. Plaintiff's aforementioned health conditions resulted from a work-related injury that he sustained on or about April 27, 2015 while performing work for Defendant.

19. Plaintiff reported his aforesaid work-related injury to Defendant's management, including but not limited to Warrilow and Rick Clark (Superintendent), and thereafter consulted with Inspira Medical Center in Vineland, NJ.

20. While at the hospital on April 27, 2015, x-rays were performed, which indicated that Plaintiff had an osteochondral lesion suspected along the medical talar dome.

21. Plaintiff reported his diagnosis to Defendant's management, including but not limited to Warrilow and Clark and filed a worker's compensation claim.

22. Plaintiff attempted to return to work performing light duty work but was told by Clark to stay home until he was called by Defendant's management.

23. Plaintiff continued to call Defendant's management to inquire about when he could return to work; however, Plaintiff's telephone calls were ignored until Worrilow finally told Plaintiff that Defendant was waiting on "corporate directive" and that he [Worrilow] was not able to talk to Plaintiff anymore about the status of his job.

24. In or about May of 2016, Plaintiff visited Reconstructive Orthopedics for an evaluation of his aforesaid health condition and was diagnosed with a "Ruptured partial intrasubstance tear of the tendo Achilles as well as osteochondral defect of talus, both [] on the right foot."

25. In or about June of 2016, Plaintiff was sent to Premier Orthopedic Associates by Defendant for an independent medical evaluation, wherein Dr. Thomas Dwyer alleged that Plaintiff's injury was not work-related.

26. Following his aforesaid doctor's visits and examinations, Plaintiff's worker's compensation claim was denied (a denial which was later appealed by Plaintiff).

27. In or about August of 2015, after Plaintiff's worker's compensation claim was denied, Plaintiff reported to his job site to try and obtain disability paperwork.

28. When Plaintiff arrived on his job site in or about August of 2015 in an attempt to obtain disability paperwork (discussed *supra*), he was informed by plant security that he was not

allowed on site. Worrilow then informed Plaintiff that, effective July 1, 2015, he [Plaintiff] was no longer employed by Defendant.

29. After informing Plaintiff that his employment with Defendant had been terminated, Worrilow told Plaintiff that he was a good worker, that he should try and get his medical condition corrected, and that he could come back to work for Defendant when he is healthy.

30. In or about July of 2016, Plaintiff's worker's compensation case against Defendant resolved.

31. In addition, Plaintiff was released to return to work performing full duty in or about July of 2016.

32. On or about August 26, 2016, Plaintiff e-mailed Worrilow stating: "Hello Bill, it's Jermaine Ford, I'm emailing you to see if your offer still stands about me coming back to work once I got cleared, well I [sic] been cleared since July and I would like to come back to work." Plaintiff did not receive any response from Worrilow.

33. On or about September 14, 2016, Plaintiff sent his resume to Defendant's management for an available scaffold builder position within Defendant.

34. When Plaintiff did not received any response to his September 14, 2016 inquiry into an available position within Defendant, Plaintiff again attempted to follow up with Defendant's management on or about October 18, 2016 again inquiring about the status of his resume' submission for an available position within Defendant.

35. Plaintiff's October 18, 2016 e-mail was again ignored by Defendant.

36. Upon information and belief, Defendant has hired multiple individuals into scaffold builder positions since August of 2016 (after Plaintiff's first e-mail to Worrilow), positions that Plaintiff was more than qualified to perform.

37. Therefore, it is believed and averred that Defendant has failed to hire/re-hire Plaintiff because of his actual/perceived/record of disabilities, requests for reasonable accommodations, and/or in retaliation for filing a worker's compensation claim.

**Count I**
**Violations of the New Jersey Law Against Discrimination**
**(Actual & Perceived Disability Discrimination / Retaliation)**

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. Plaintiff suffered from qualifying health conditions under the NJ LAD, which (at times) affected his ability to perform some daily life activities, such as working, standing, walking, and climbing.

40. Plaintiff requested reasonable accommodations from Defendant's management, in the form of time off from work and light-duty work.

41. Plaintiff was told at the time of his termination by Worrilow that he was a good worker, that he should try and get his medical condition corrected, and that he could come back to work for Defendant when he is healthy.

42. When Plaintiff was cleared to return to work performing full-duty, he attempted to return to work at Defendant and had applied for available positions within Defendant; however, Plaintiff's numerous attempts to seek employment/re-employment with Defendant were ignored.

43. Upon information and belief, Defendant has hired multiple individuals into scaffold builder positions since August of 2016 (after Plaintiff's first e-mail to Worrilow), positions that Plaintiff was more than qualified to perform.

44. It is believed and therefore averred that Defendant failed to hire and/or re-hire Plaintiff because of (1) his known and/or perceived disabilities; (2) his record of impairment; and/or (3) his prior requests for reasonable accommodations, which constitutes unlawful retaliation.

45. These actions as aforesaid constitute violations of the NJ LAD.

## Count II
## Common-Law Wrongful Discharge
### (Public Policy Violation)

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Upon information and belief, Defendant's refused to hire/re-hire Plaintiff in substantial part for filing a claim for worker's compensation benefits against Defendant and/or for his work-related injuries.

48. It is against New Jersey's public policy for an individual to suffer an adverse action in retaliation for filing a worker's compensation claim. *Stewart v. County of Hudson*, 2011 N.J. Super. Unpub. LEXIS 1965, 34 (App.Div. July 22, 2011).

49. These actions as aforesaid constitute wrongful termination in New Jersey.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.   Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation/interference at the hands of Defendant until the date of verdict;

C.   Plaintiff is to be awarded liquidated/punitive damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.   Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, emotional distress and/or pain and suffering damages (where legally permitted);

E.   Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable state law;

F.   Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable state law; and

G.   Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law.

                                          Respectfully submitted,

                                    **KARPF, KARPF & CERUTTI, P.C.**

                  By: _____
                          Ari R. Karpf, Esq.
                          3331 Street Road
                          Two Greenwood Square, Suite 128
                          Bensalem, PA 19020
                          (215) 639-0801

Dated: January 20, 2017